**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KIRA WAHLSTROM,<br><br>        Plaintiff<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY<br>and AMERICAN GUARANTEE AND<br>LIABILITY INSURANCE COMPANY<br><br>        Defendants | NO.  1:19-cv-12208-LTS |

**DEFENDANTS ZURICH AMERICAN INSURANCE COMPANY AND AMERICAN
GUARANTEE AND LIABILITY INSURANCE COMPANY'S REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The plaintiff misunderstands the thrust of the defendants' motion, and as a result her brief does not deal with the dispositive and undisputed issues on which the defendants rely.  This reply will deal with two of those issues: (1) that American Guarantee and Liability Insurance Company (AGLIC) was an excess insurer and had no settlement obligation until the primary insurance was either exhausted or tendered; and (2) that the settlement offers AGLIC made after the primary insurer had offered its limits were reasonable.

**ARGUMENT**

**I.      AS AN EXCESS INSURER, AGLIC HAD NO OBLIGATION TO MAKE A
SETTLEMENT OFFER UNTIL THE PRIMARY INSURER HAD OFFERED THE
LIMITS OF THE PRIMARY POLICY**

The plaintiff acknowledges that AGLIC was an excess insurer, and she appears to acknowledge that as an excess insurer AGLIC had no settlement obligation until the primary policy limits had been offered.  But she nevertheless believes that AGLIC "should be liable for the

unreasonable handling of settlement and for the unjustly delayed tender of [the primary insurer] One Beacon's policy limit."  (Plaintiff's Brief at 14).  This is not how excess insurance works.

The relationship between primary and excess insurers is explained in <u>Allmerica Financial Corp. v. Certain Underwriters of Lloyds,</u> 449 Mass. 621, 871 N.E.2d, 418 (2007):

> An insurance program involving a primary policy and one or more excess policies divides the risk into distinct units and insures each unit individually.   The individual insurers do not (absent a specific provision) act as coinsurers of the entirety of the risk.   Rather each insurer contracts with the insured individually to cover a particular portion of the risk.
>
> • • •
>
> [P]rimary and excess insurers act independently of each other with respect to decisions about their policies, including coverage determination and settlements.  <u>Id</u>. at 629-30; 871 N.E.2d at 426.

The nature of this relationship is the foundation for one of the cardinal principles of insurance law and practice.  That is, an excess insurer does not have a duty to settle a claim unless and until the primary insurer has tendered its policy limit either directly to the excess insurer or to the claimant in a settlement offer.  <u>See</u> 1 A. Wendt, <u>Insurance Claims & Disputes</u> at 5-132 (6th ed. 2013); 2 B. Ostrager & T. Newman, <u>Handbook of Insurance Coverage Disputes</u> at 1058, 1077 (14th ed. 2008).  This is the law in Massachusetts.  <u>Clegg v. Butler</u>, 424 Mass. 413, 421 n. 8, 876 N.E.2d. 1134, 1140 n. 8 (1997) ("The evidence regarding an excess insurer's readiness to pay, both as to timing and amount, must necessarily be indirect and inferential . . . since the excess insurer has no obligation or incentive to make an explicit commitment until the primary insurer has acted.");  <u>Chiulli v. Liberty Mut. Ins. Co.</u>, 97 Mass. App. Ct. 428, 251, 146 N.E.2d 471, 476 (2020) ("[the primary insurer] was responsible for controlling the defense of the Federal court case – and thus controlled any settlement with [the plaintiff] – until the [primary insurer] concluded that its policy limit was exhausted at which point it was required to tender its policy limit to [the

excess insurer] so that [the excess insurer] could assume control.").  See <u>Mutual Ins. Co. v. Murphy</u>, 630 F.Supp.2d 158, 165 (D. Mass 2009) ("Proof of control is central to duty to settle inquiries under Mass. Gen. Laws Chs. 176D and 93A.").

Barring contract language that imposes different obligations – and there is none in this case – this principle has been universally accepted.  See <u>Kivi v. Nationwide Mut. Ins. Co.</u>, 695 F.2d 1285, 1287 (11th Cir. 1983).  ("The primary insurer assumes the duty of negotiating to settle in good faith by virtue of its control of the insured's defense.  The excess insurer has no control." ); <u>St. Paul Fire & Mar. Ins. Co. v. Lexington Ins. Co.</u>, 2006 WL 1295408 at *4 (S.D. Fla. April 4, 2006) (excess insurer's "liability [to provide coverage] only after a predetermined amount of primary coverage has been exhausted"); <u>Nova Cas. Co. v. One Beacon Ins. Co.</u>, 603 Fed. App'x 898, 903 (11th Cir. 2015) ("As the excess insurer, Nova's coverage was not activated until after the first $1 million was paid by One Beacon's policy."); <u>Valentine v. Aetna Ins. Co.</u>, 564 F.2d 292 (9th Cir. 1977) ("an excess insurer is not obligated to contribute to a settlement until the primary carrier's coverage has been exhausted[.]"); <u>Berglund v. State Farm Auto Ins. Co.</u>, 121 F.3d 1225, 1228 (8th Cir. 1997) (excess insurer "had no obligation to pay anything or to evaluate seriously" the claim until the primary insurer offered its policy limits); <u>Quincy Mut. Fire Ins. Co., v. New York Central Mut. Fire Ins. Co.</u>, 89 F.Supp.3d 291, 312 (N.D.N.Y. 2014) ("the law places no legal obligation on an excess carrier . . . to negotiate a claim unless and until primary coverage is exhausted."); <u>Continental Cas. Co. v. U.S.F. & G. Co.</u>, 516 F.Supp. 384, 393 (N.D. Cal 1981) ("an excess insurer has no duty to contribute to a settlement until the primary carrier's policy limits have been exhausted.").

In this case, it is undisputed that One Beacon first offered its $1 million policy limits at a mediation on June 22, 2015.  The reasonableness of AGLIC's conduct must be judged from that

date forward.  Any complaints about settlement conduct before that date must be directed to One Beacon.  The plaintiff's claim that AGLIC "remains accountable for failing to demand a $1 million offer or tender of the $1 million for earlier" (Plaintiff's Brief at 19) misstates the law and would upend settled contractual relations between excess and primary insurers as it would have the effect of turning them into co-insurers, a result the SJC has prohibited.  <u>Allmerica</u>, 449 Mass. at 629-30, 871 N.E.2d at 426.

## II.   <u>AGLIC MADE TIMELY AND REASONABLE SETTLEMENT OFFERS AFTER ONE BEACON HAD OFFERED ITS POLICY LIMITS</u>

Once AGLIC's settlement obligation is placed in the proper time frame, it is undisputed that its offers were reasonable and timely.

AGLIC made the following offers:

- June 22, 2015 - $1.5 million

- June 22, 2015 - $1.75 million

- July 24, 2015 - $2.25 million

- August 10, 2015 - $500,000/$5 million high-low

- August 11, 2015 - $750,000/$6 million high-low

- August 11, 2015 - $1 million/$5 million high-low

The plaintiff did not accept any of them.

The plaintiff makes no argument that any of these offers were unreasonable in light of the $4 million verdict.  Indeed, it is not possible to make that argument with respect to any of the high-low offers because the verdict amount was within the range of all of them.  Her principal complaint is that AGLIC waited too long to act (Plaintiff's Brief at 19).  But that argument evaporates in light of the fact that AGLIC's settlement obligation began only on June 22, 2015.

**CONCLUSION**

The plaintiff concludes by saying there is a question of fact as to whether AGLIC controlled One Beacon's settlement decision.  (Plaintiff's Brief at 18).  This fails for at least three reasons.  First, as a matter of law, AGLIC, as an excess insurer, does not and cannot control the actions of One Beacon, the primary insurer.  Second, if the plaintiff is arguing that there is some unique language in either the One Beacon policy or the AGLIC policy that gives AGLIC such control – there isn't any – she has not established that fact.  Neither of the policies are even exhibits to this motion or to the plaintiff's voluminous opposition.  Finally, the plaintiff's theory that AGLIC "controlled" One Beacon is not pleaded in the complaint and was not a theory of liability until the plaintiff filed her opposition to this motion.  On this record, there is no genuine issue of material fact.  Summary judgment should be granted for the defendants.

DEFENDANTS,

ZURICH AMERICAN INSURANCE
COMPANY and AMERICAN
GUARANTEE AND LIABILITY
INSURANCE COMPANY

By their attorneys,


*/s/ Allen N. David*
Allen N. David, BBO #115000
Scarlett M. Rajbanshi, BBO #666103
Avana A. Epperson-Temple, BBO #695292
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
 (617) 951-2100
adavid@peabodyarnold.com
srajbanshi@peabodyarnold.com
aeppersontemple@peabodyarnold.com

Dated:  March 30, 2022

## **CERTIFICATE OF SERVICE**

I, Allen N. David, hereby certify that on this 30th day of March, 2022 , this document was served by electronic delivery through the CM/ECF system on the registered participants as identified on the Notice of Electronic filing, which will forward copies to Counsel of Record.

*/s/ Allen N. David*
Allen N. David